UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

*Electronically Filed*

| | |
|---|---|
| COLE BUILDERS, LLC | ) |
| Plaintiff | ) |
| -vs- | ) Case No. 1:23-cv-125-GNS |
| MICHAEL MILLER, | ) |
| Defendant. | ) JURY DEMAND |

## COMPLAINT

Plaintiff Cole Builders, LLC, by counsel and through, and for its Complaint against Defendant Michael Miller, states as follows:

## PARTIES

1. Plaintiff Cole Builders, LLC, is a Mississippi limited liability company with a principal address at 1892 Ascalmore Creek Road, Cascilla, MS 38920.

2. Defendant Michael Miller is and was at all times relevant to the events set forth in this Complaint a citizen and resident of Muhlenberg County, Kentucky.

## JURISDICTION & VENUE

3. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332 because diversity of citizenship exists between Plaintiff and Defendant, and the amount in controversy exceeds $75,000, exclusive of costs and interest.

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because the Defendant is a resident of this judicial district.

**BACKGROUND**

5. Plaintiff is a family-owned construction company based out of Batesville, Mississippi which specializes in constructing mini-storage and metal buildings.

6. Sometime in early 2022, Defendant contacted Plaintiff about constructing nine storage buildings in Evansville, Indiana (the "Indiana Job").

7. On February 1, 2022, and in connection with the Indiana Job, Defendant sent Plaintiff floor plans for the buildings that Defendant wanted Plaintiff to construct. **Exhibit A**.

8. Plaintiff sent the engineered floor plans that it received from Defendant to ACI Building Systems, Inc. ("ACI"), which is the company that manufacturers the materials which Plaintiff uses to construct mini-storage and metal buildings, and ACI, in turn, advised Plaintiff of the anticipated cost of the materials needed for Plaintiff to perform the Indiana Job.

9. On or about February 25, 2022, and in-line with Defendant's instructions, Plaintiff, based on the information received from ACI, generated a contract for the Indiana Job and sent same to Defendant. A copy of this contract is attached hereto is **Exhibit B**.

10. On or about April 20, 2022, Defendant, for whatever reason, asked Plaintiff to re-quote the Indiana Job, so on April 25, 2022, Plaintiff sent Defendant a new contract for the Indiana Job. A copy of this contract (the "Final Contract") is attached hereto as **Exhibit C**, and, under the terms of the Final Contract, the Final Contract price was $2,102,106.50.

11. Thereafter, Defendant accepted the terms of the Final Contract by, among other things, instructing Plaintiff to direct ACI to produce and prepare the materials necessary to complete the Indiana Job as described in the Final Contract (hereinafter, the "Materials").

12. Plaintiff's project manager, Larry Cole, Jr. ("Larry"), stressed to Defendant that he would not be able to "stop" the Indiana Job after directing ACI to produce the Materials and further

expressed to Defendant that it would be imprudent to direct ACI to produce the Materials if Plaintiff was not ready for the Materials or had reservations about the Indiana Job.

13. Defendant responded by directing Plaintiff to send the buildings (that is, the Materials) to Evansville, Indiana, and promising he would make it happen.

14. In reliance on Defendant's instructions and promises, Plaintiff directed ACI to produce the Materials, which were specially prepared for the Indiana Job and which cannot be easily used on or incorporated into a different job, and, thereafter, ACI produced approximately $736,796 worth of Materials to be used on the Indiana Job as described in the Final Contract.

15. On August 17, 2022, Plaintiff, acting through its project manager, Larry, advised Defendant that the Materials were scheduled to be transported to the jobsite in Evansville within a week and to ask whether the jobsite was ready for the Materials to be delivered. **Exhibit D.**

16. Defendant responded: "Should be ready. I will check with contractor." (*Id.*).

17. In reliance on Defendant's instructions and representations, Plaintiff made arrangements to have the Materials transported to the jobsite in Evansville, Indiana.

18. Plaintiff also sent his crew to Evansville, Indiana to perform the Indiana Job.

19. On August 25, 2022, Plaintiff, acting through its project manager, Larry, advised Defendant that his crew was at the site of the Indiana Job, that the Materials were set to be delivered within an hour, and that, according to his on-site crew members, that the jobsite was not ready to receive the Materials. **Exhibit D**.

20. Defendant was evidently unable to obtain financing for the Indiana Job, and, to that end, Defendant instructed Plaintiff to cancel any future deliveries or work. **Exhibit D**.

21. Plaintiff, acting through its project manager, Larry, reminded Defendant that he could not stop ACI from producing the Materials, and that Materials were scheduled to be delivered on the Indiana Job for the next two weeks. **Exhibit D**.

22. Over the next two months, Defendant represented to Plaintiff on multiple occasions that he was meeting with a partner in an effort to obtain financing for the Indiana Job; however, to date, and on information and belief, Defendant has not obtained financing for that job, and, because Defendant has not obtained financing for that job, it has not been completed. **Exhibit D**.

23. Defendant's breach, termination, and/or cancellation of the Indiana Job after instructing Plaintiff to direct ACI to produce the Materials and after causing Plaintiff to have the Materials delivered to Indiana caused Plaintiff substantial damages, including but not limited to:

    a. Plaintiff had to pay ACI $597,892.05 for the Materials that Plaintiff directed ACI to produce in accordance with Defendant's instructions;

    b. Plaintiff had to pay various workers $2,807.50 to load the Materials into a truck so that same could be transported back to Mississippi;

    c. Plaintiff had to pay a logistics company $6,460 to arrange for the Materials to be transported by truck back to Mississippi;

    d. Plaintiff had to pay an equipment rental company $3,396.38 to have a lift delivered to Indiana to load the Materials into trucks to be transported back to Mississippi;

24. Defendant's breach and cancellation of the Indiana Job further deprived Plaintiff of $420,421.30 in profits that it expected to receive from the performance of that job.

## COUNT I
### *Breach of Contract*

25. Plaintiff hereby reasserts and incorporated by reference its allegations set forth above as if fully set forth herein.

26. Plaintiff offered to perform the Indiana Job for Defendant pursuant to the terms set forth in the Final Contract, attached hereto as **Exhibit C**.

27. Defendant accepted Plaintiff's offer to perform the Indiana Job pursuant to the terms set forth in the Final Contract when Defendant, among other things, instructed Plaintiff to direct ACI to produce the Materials necessary to complete the Indiana Job and when Defendant instructed Plaintiff to transport those Materials to the worksite of the Indiana Job.

28. Relying on Defendant's instructions, Plaintiff directed ACI to produce the Materials and made arrangements to have those Materials transported Evansville, Indiana.

29. After ACI produced the Materials and Plaintiff had the Materials transported to Indiana, Defendant unilaterally terminated and/or cancelled the Indiana Job.

30. As a result of Defendant's breach of the Final Contract, Plaintiff incurred substantial damages, including but not limited to: (1) Plaintiff was denied the profits that it would have enjoyed under the Final Contract had Defendant not unilaterally terminated and/or cancelled the Indiana Job; and (2) Plaintiff was required to pay ACI for the Materials and for the transportation of same—had Defendant not unilaterally terminated and/or cancelled the Indiana Job, Defendant would have paid for the Materials and the Materials would not have had to have been transported back to Batesville, Mississippi from Evansville, Indiana.

31. Defendant should be ordered to pay Plaintiff the profits that Plaintiff would have enjoyed under the Final Contract had Defendant not unilaterally terminated and/or cancelled the Indiana Job (which, as noted, total approximately $420,421.30), along with all the expenses that Plaintiff incurred as a result of Defendant's breach (which, as noted above, total at least $610,555.93), together with pre and post-judgment interest and attorneys' fees and costs.

## COUNT II
### *Promissory Estoppel*

32. Plaintiff hereby reasserts and incorporated by reference its allegations set forth above as if fully set forth herein.

33. Defendant instructed Plaintiff to direct ACI to produce the Materials necessary to complete the Indiana Job.

34. Thereafter, Plaintiff's project manager stressed to Defendant that Plaintiff would not be able to "stop" the Indiana Job or the production of the materials necessary to complete that job after directing ACI to produce the Materials and that, consequently, it would be imprudent to direct ACI to produce the Materials if Plaintiff was not ready for the Materials, had reservations about the Indiana Job, or was unsure of the Indiana Job would move forward.

35. In response to Plaintiff's concerns, Defendant directed Plaintiff to "send the buildings" (that is, the Materials) to Evansville Indiana and promised Plaintiff that he would "make it" (that is, the Indiana Job) "happen."

36. By instructing Plaintiff to direct ACI to produce the Materials for the Indiana Job and promising Plaintiff that he would ensure that the Indiana Job would "happen," Defendant induced Plaintiff and should have reasonably expected to induce Plaintiff to direct ACI to produce the aforementioned Materials and to have same transported to Indiana.

37. In reliance on Defendant's instructions and promises, Plaintiff directed ACI to produce the Materials, which were specially prepared for the Indiana Job and which cannot be easily used on or incorporated into a different job, and, thereafter, ACI produced approximately $597,892.05 worth of Materials to be used in connection with the Indiana Job.

38. Plaintiff reliance on Defendant's promise was reasonable, as Plaintiff had worked for Defendant in the past without issue and believe that Defendant was trustworthy.

39. After Defendant caused Plaintiff to have the Materials necessary for completion of the Indiana Job produced and to have those Materials transported to Evansville, Indiana, Defendant unilaterally cancelled the Indiana Job.

40. As a result of Defendant's promises and subsequent conduct, Plaintiff has no use for the Materials that it directed ACI to produce in connection with the Indiana Job but was nonetheless required to pay ACI for those Materials and to have those Materials loaded into a truck and transported back to Batesville, Mississippi for storage.

41. Defendant's promises must be enforced so that Plaintiff can recover the profits that it would have received in connection with the Indiana Job and the expenses it incurred in reliance on Defendant's promises, which total at least $610,555.93, as any other result would be unjust.

42. Defendant should be ordered to pay Plaintiff the profits that Plaintiff would have enjoyed had Defendant not unilaterally terminated and/or cancelled the Indiana Job (which, as noted, total approximately $420,421.30), along with all the expenses that Plaintiff incurred as a result of Defendant's breach (which, as noted above, total at least $610,555.93), together with pre and post-judgment interest and attorneys' fees and costs.

**WHEREFORE**, Plaintiff, Cole Builders, LLC, prays for a judgment against Defendant Michael Miller as follows:

A. For a judgment against Defendant Michael Miller for all damages incurred as a result of Defendant's conduct as described herein, including but not limited to compensatory damages, lost profit damages, expectation damages, and consequential damages.

B. For compensatory damages in an amount in excess of the jurisdictional amount of this Court;

C. For their costs herein expended, including attorney's fees;

  D. For interest at the maximum rate allowed by law until the date judgment is entered, and from the date judgment is entered until paid in full;

  E. For all other relief to which it appears the Plaintiff is entitled; and

  F. Trial by jury.

This 25th day of September, 2023.

              KERRICK BACHERT, PSC
              2445 Nashville Road
              Bowling Green, KY 42101
              T: (270) 782-8160
              F: (270) 782-5856
              tkerrick@kerricklaw.com
              athomason@kerricklaw.com

              */s/ Thomas N. Kerrick*
              Thomas N. Kerrick
              Alex Thomason
              *Counsel for Plaintiff Cole Builders, LLC*