UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:23-CV-00125-GNS-HBB


COLE BUILDERS, LLC                                                                    PLAINTIFF

v.

MICHAEL MILLER                                                                       DEFENDANT


**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment (DN 50) and Defendant's Motion for Summary Judgment (DN 51). The motions are ripe for adjudication.

**I.      STATEMENT OF FACTS AND CLAIMS**

This action concerns the proposed construction of storage units in Evansville, Indiana, ("the Evansville job") and in Lewisburg, Kentucky ("the Lewisburg job"). (Compl. ¶ 6, DN 1; Answer & Countercl. 7-8, DN 6). Defendant Michael Miller ("Miller"), a self-employed real estate broker, has worked with Plaintiff Cole Builders, LLC ("Cole Builders") on multiple construction projects. (Miller Dep. 11:6-11, 50:15-51:23, May 1, 2024, DN 50-5). To begin a project, Cole Builders typically provides the customer with a quote, and if the customer wants to accept and form a contract, the customer signs the quote and pays a down payment. (Kennington Dep. 24:1-20, June 30, 2025, DN 50-2). For the Lewisburg job, Miller signed a price quotation and paid a down payment.[1] (Miller Dep. 58:12-15; Cole Dep. 65:4-6, May 1, 2024, DN 50-1). Cole Builders

---

[1] The first quote for the Lewisburg job was issued on February 15, 2022, and signed by Miller on April 12, 2022. (Miller Dep. Ex. 7, at 248, 251, DN 50-5). Cole Builders issued an updated quote on April 15, 2022, because the price of steel had increased. (Miller Dep. Ex. 8, at 255, DN 50-5; Miller Dep. 58:1-8). The updated quote listed the project's location as Springfield, Tennessee,

1

also provided Miller with two price quotations for the Evansville job, but Miller never signed either quote. (Miller Dep. Ex. 12, at 282, DN 50-5; Miller Dep. Ex. 13, at 289, DN 50-5 [hereinafter Revised Evansville Quote]). After sending Miller the Revised Evansville Quote, Cole Builders alleges that Miller verbally instructed Cole Builders' project manager, Larry Cole Jr. ("Cole"), to go ahead with the job, so Cole Builders ordered the materials from its supplier. (Cole Dep. 84:12-86:7). Cole and Miller continued communicating about the Evansville and Lewisburg jobs through texts and calls. (Cole Dep. 106:7-107:8; Miller Dep. Ex. 6, DN 50-5 [hereinafter Cole & Miller Texts]).

When Cole informed Miller that his crew was at the Evansville job site to unload the building materials, Miller told Cole to cancel any more deliveries. (Cole & Miller Texts 243-244). Miller claims that he never authorized Cole to order any materials or otherwise accepted Cole Builders' price quotation for the Evansville job; he had elected not to move forward with the Evansville job for financial reasons. (Miller Dep. 97:16-22). Miller asserts that he believed he and Cole were texting about preparations for the Lewisburg job and any references to "Indiana" by Cole were a mistake. (Miller Dep. 91:7-21). Even though Miller believed he was not contractually bound, he attempted to find a financial partner for the Evansville job after he learned the materials had been ordered, though he was ultimately unsuccessful. (Miller 102:1-13). After the Evansville job fell apart, Cole Builders cancelled its order for the Lewisburg job materials. (Richter Dep. Ex. 11, at 201, July 2, 2025, DN 50-4). Cole Builders has not performed the Lewisburg job but has retained Miller's down payment because it claims Millers owes it even more for the materials from the Evansville job. (Cole Dep. 66:10-18).

---

apparently by mistake, and was never signed by Miller. (Miller Dep. Ex. 8, at 255, 258; Miller Dep. 59:5-20, 60:1-61:2).

Cole Builders then brought this action against Miller for breach of contract and promissory estoppel.  (Compl. 4-7).  In response, Miller asserted counterclaims for breach of contract, fraud, and unjust enrichment.  (Answer & Countercl. 9-11).  Miller now moves for summary judgment on Cole Builders' claims and Cole Builders moves for partial summary judgment on Miller's counterclaim for fraud.  (Def.'s Mot. Summ. J., DN 51; Pl.'s Mot. Partial Summ. J., DN 50).

## II.     JURISDICTION

The Court has subject-matter jurisdiction over this action through diversity jurisdiction because there is complete diversity between the parties and the amount in controversy exceeds $75,000.00.  *See* 28 U.S.C. § 1332.

## III.     STANDARD OF REVIEW

In ruling on a motion for summary judgment, the Court must determine whether there is any genuine issue of material fact that would preclude entry of judgment for the moving party as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of stating the basis for the motion and identifying the evidence demonstrating an absence of a genuine dispute of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  If the moving party satisfies its burden, the nonmoving party must then produce specific evidence proving the existence of a genuine dispute of fact for trial.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

While the Court must view the evidence in the light most favorable for the nonmoving party, the nonmoving party must do more than merely show the existence of some "metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted).  Rather, the nonmoving party must present facts proving that a genuine factual dispute exists by "citing to particular parts of materials in the record" or by

3

"showing that the materials cited do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient" to overcome summary judgment. *Anderson*, 477 U.S. at 252.

## IV.   <u>DISCUSSION</u>

### A.   <u>Defendant's Motion</u>

Miller moves for summary judgment on Cole Builders' breach of contract and promissory estoppel claims. (Def.'s Mot. Summ. J. 1).

#### 1.   *Breach of Contract*

Under Kentucky law, "[t]he elements of a breach of contract are: (1) the existence of a valid contract; (2) breach of the contract; and (3) damages or loss to plaintiff. *Sudamax Industria e Comercio de Cigarros, Ltda v. Buttes & Ashes, Inc.*, 516 F. Supp. 2d 841, 845 (W.D. Ky. 2007). Miller disputes the first and third elements in his motion. (*See* Def.'s Mot. Summ. J. 3-6, 8-9).

##### a.   **Existence of a Valid Contract**

Issues regarding contract formation are questions of law. *Britt v. Univ. of Louisville*, 628 S.W.3d 1, 5 (Ky. 2021). "The essential elements of a valid contract are an offer and unequivocal acceptance, a certain and complete recitation of the material terms, and consideration." *Univ. of Ky. v. Regard*, 670 S.W.3d 903, 912 (Ky. 2023) (citation omitted).[2] Miller does not raise any arguments relating to consideration.

---

[2] The parties presume that the Uniform Commercial Code does not apply, as the contract is primarily for Cole Builders' services. *Wehr Constructors, Inc. v. Steel Fabricators, Inc.*, 769 S.W.2d 51, 54 (Ky. App. 1988) ("[W]hether or not Article II of the Code applies is determined by analyzing whether the predominant factor and purpose of the contract is the rendition of service, with goods incidentally involved, or whether the contract is for the sale of goods with labor incidentally involved." (citation omitted)).

### i.      Offer

"An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." Restatement (Second) of Contracts § 24 (A.L.I. 1981).[3]  A price quotation is typically considered an invitation for an offer, rather than an offer itself.  *Dyno Constr. Co. v. McWane, Inc.*, 198 F.3d 567, 572 (6th Cir. 1999) (citations omitted).  "However, a price quotation may suffice for an offer if it is sufficiently detailed and it 'reasonably appear[s] from the price quotation that assent to that quotation is all that is needed to ripen the offer into a contract.'"  *Id.* (alteration in original) (citations omitted).

Courts look at "all of the surrounding facts and circumstances" to determine whether a price quote is an offer, including whether the quote includes descriptions of the product, price, quantity, and terms of payment, but primarily the intent of the person proffering the price quotation.  *Id.* (citations omitted).  For example, a letter that included the term "price quotation" and lacked "language indicating an offer was being made" and "terms regarding quantity, time of delivery, or payment" was not intended as an offer.  *Id.* (citing *Interstate Indus., Inc. v. Barclay Indus., Inc.*, 540 F.2d 868 (7th Cir. 1976)).  "Thus, to constitute an offer, a price quotation must 'be made under circumstances evidencing the express or implied intent of the offeror that its acceptance shall constitute a binding contract.'"  *Id.* (citation omitted).

In this instance, the price quotation for the Evansville job is sufficiently detailed to constitute an offer.  In the quote, Cole Builders "proposes to furnish material & labor as per" the

---

[3] "Kentucky courts have not formally adopted the Second Restatement of Contracts."  *VanDeraa v. Bruce*, No. 2:20-CV-177-WOB-CJS, 2022 WL 3093735, at *2 (E.D. Ky. Aug. 3, 2022). Nonetheless, Kentucky courts look to the Restatement for guidance.  *See, e.g.*, *Regard*, 670 S.W.3d at 912.

specifications included in the quote, which includes descriptions of the general requirements, site work, concrete, and metal buildings for the job. (Revised Evansville Quote 285). The total price—$2,202,107, which is later broken down in a chart—is provided along with payment terms: 10% of the total price is due upon execution of the contract, 35% upon completion of concrete, 45% upon delivery of materials, and remaining balance upon completion of the building. (Revised Evansville Quote 289, 291). The quote also specifies that "[t]he above price is subject to revision if not accepted within 15 days of the above date." (Revised Evansville Quote 289).[4]

Moreover, it is clear from the language of the price quotation that it was intended to function as a contact once accepted. There is a space for the owner and Cole Builders to sign and date. (Revised Evansville Quote 289). The price quotation also includes a page of additional contractual terms. Term 4, for example, states that "[t]his *contract* contains erection and concrete, such factors such as weather, availability of crews, availability of materials does not allow Cole Builders to guarantee a[n] exact time frame for delivery and completion of work." (Revised Evansville Quote 290 (emphasis added)). There are other references throughout the page to "this contract" and "the contract price," referring to the price set out in the quote. (Revised Evansville Quote 290). A choice of law clause is also included. (Revised Evansville Quote 290). This aligns with how a contractor for Cole Builders described the relationship between the price quotation and the contract. (Kennington Dep. 21:15-16 ("[The contract is] a part of the estimate.")). Because all Miller needed to do was accept the price quotation, it was an offer.

---

[4] A term later states that "[t]he above price is subject to revision if not accepted within 30 days of the above date." (Revised Evansville Quote 290).

### ii.      Acceptance

"Acceptance of an offer is a manifestation of assent to the terms thereof made by the offeree in a manner invited or required by the offer."  Restatement (Second) of Contracts § 50 (A.L.I. 1981).  "In the absence of a statute requiring a signature or an agreement that the contract shall not be binding until it is signed, parties may become bound by the terms of a contract, even though they do not sign it, where their assent is otherwise indicated."  *Energy Home, Div. of S. Energy Homes, Inc. v. Peay*, 406 S.W.3d 828, 837 (Ky. 2013) (quoting *Cowden Mfg. Co. v. Sys. Equip. Lessors, Inc.*, 608 S.W.2d 58, 61 (Ky. App. 1980)); *SMA Portfolio Owner, LLC v. Corporex Realty & Inv., LLC*, 112 F. Supp. 3d 555, 576 (E.D. Ky. 2015) ("[W]hile parties can accept a contract by signing it, that is not the only means." (citing *Cowden Mfg. Co., Inc.*, 608 S.W.2d at 61)), *aff'd sub nom. Bank of Am., N.A. v. Corporex Realty & Inv. Corp.*, 661 F. App'x 305 (6th Cir. 2016). Verbal agreements are no less binding than written agreements.  *Motorists Mut. Ins. Co. v. Glass*, 996 S.W.2d 437, 445 (Ky. 1997), *as modified* (Feb. 18, 1999).  "Furthermore, if a dispute exists as to whether an oral agreement was reached, the issue is to be resolved by a jury."  *Id.* (citation omitted).

Miller argues that the statute of frauds applies here.  The statute of frauds provides, in relevant part:

> No action shall be brought to charge any person . . . [u]pon any agreement that is not to be performed within one year from the making thereof . . . unless the promise, contract, agreement, representation, assurance, or ratification, or some memorandum or note thereof, be in writing and signed by the party to be charged therewith, or by his authorized agent.

KRS 371.010.  "Under Kentucky law, the applicable yardstick for the enforceability of an oral contract is not whether performance actually takes more than a year, but whether it could occur

within a year." *Lalonde v. MMR Enters., LLC*, No. CV 07-139-JMH, 2008 WL 11464838, at *3 (E.D. Ky. Aug. 19, 2008).

In this instance, it is uncontested that Miller did not sign a contract for the Evansville job. (*See* Cole Dep. 88:20-89:7; Pl.'s Resp. Def.'s Mot. Summ. J. 2, DN 54). The alleged agreement between Cole Builders and Miller, however, could be performed within one year: Cole testified that larger projects could take more or less than a year to complete, and another Cole Builders employee specifically testified that the Evansville job could have been completed in less than a year, weather permitting. (Cole Dep. 46:6-24; White Dep. 119:12-24, July 31, 2025, DN 50-8). Thus, the statute of frauds does not apply, and Miller's signature is not required for an agreement with Cole Builders to be enforceable.

Cole Builders asserts that Miller verbally accepted the contract during a phone call between April 25 and May 12. (Pl.'s Resp. Def.'s Mot. Summ. J. 2-3; Cole Dep. 84:2-86:7). Miller argues that Cole Builders has not proven that Miller made such an instruction. (Def.'s Mot. Summ. J. 5-6). Cole Builders has, however, met its burden on summary judgment: the Kentucky Supreme Court has held that "testimony alone was sufficient to create a jury issue" regarding whether a verbal agreement made. *Glass*, 996 S.W.2d at 445. It is evident that Cole Builders has demonstrated a genuine dispute of material fact from Cole's testimony alone.[5]

---

[5] Miller argues that his "failure to object" cannot be construed as acceptance because there was no meeting of the minds. (Def.'s Mot. Summ. J. 6). That is not what Cole Builders has alleged; Cole Builders asserts that Miller affirmatively agreed to the contract. (Pl.'s Resp. Def.'s Mot. Summ. J. 8). Miller also argues that, even if there was acceptance, it was not unequivocal, and that his acceptance was not a mirror image of the offer. (Def.'s Mot. Summ. J. 6). Cole's testimony, if true, however, would defeat both arguments because his testimony demonstrates that Miller's acceptance was unequivocal and did not alter the terms of the offer. (Cole Dep. 86:2-7).

### iii.    Material Terms

"Under Kentucky law, a valid contract must include the parties' obligations in sufficiently 'definite and certain terms.'" *First Tech. Cap., Inc. v. JPMorgan Chase Bank, N.A.*, 53 F. Supp. 3d 972, 984 (E.D. Ky. 2014) (quoting *Kovacs v. Freeman,* 957 S.W.2d 251, 254 (Ky. 1997)). "Kentucky takes an all or nothing approach to contracting. . . . Kentucky treats a preliminary agreement—even one evincing intent to be bound—as unenforceable if material terms remain subject to future or further negotiation." *Id.* (citations omitted). A valid contract may contain an open material term, however, if there is an "agreed key by which to fill an otherwise open essential provision . . . ." *Id.* at 985.

"Material terms are those terms essential to the enforcement of a contract." *C.A.F. & Assocs., LLC v. Portage, Inc.*, 913 F. Supp. 2d 333, 343 (W.D. Ky. 2012); *see Warren v. Cary-Glendon Coal Co.*, 230 S.W.2d 638, 640 (Ky. 1950) ("[I]t is essential that the contract itself be specific and the certainty required must extend to all particulars essential to the enforcement of the contract, such as the subject matter and purpose of the contract, the parties, the consideration, the time and place of performance, terms of payment and duration of the contract."); *Mitts & Pettit, Inc. v. Burger Brewing Co.*, 317 S.W.2d 865, 866 (Ky. 1958) ("The terms of a contract must be complete and sufficiently definite to enable the court to determine the measure of damages in the event of a breach."). "What specific terms are 'material' may vary by contract . . . ." *Ky. Indus. Hemp, LLC v. Teterboro Partners, LLC*, No. 5:19-496-KKC, 2021 WL 4993481, at *3 (E.D. Ky. Oct. 27, 2021) (citations omitted).

Miller argues that the parties did not agree on all material terms. (Def.'s Reply Mot. Summ. J. 3-5, DN 55). Specifically, Miller asserts that "[n]o timetable was discussed, no definite layouts were selected, and no dollar figures were agreed to, either verbally or in writing." (Def.'s Reply

9

Mot. Summ. J. 4).  These terms, however, are contained in the price quotation, which Cole Builders alleges that Miller accepted.  As to the timetable, the price quotation states that:

> This contract contains erection and concrete, such factors as weather, availability of crews, availability of materials does not allow Cole Builders to guarantee a[n] exact time frame for delivery and completion of work.  Cole Builders strives to complete every project in a *reasonable time frame* and will coordinate with owner to try and deliver on a schedule that does this.

(Revised Evansville Quote 290 (emphasis added)).  Regardless, "[v]alid contracts are often made which do not specify the time for performance.  Where the contract calls for a single performance such as the rendering of a service or the delivery of goods, the time for performance is a 'reasonable time.'"  Restatement (Second) of Contracts § 33 (A.L.I. 1981); *see* 1 Williston on Contracts § 4:23 (4th ed. May 2025 update) ("This same rule applies when work is to be done and the promise fixes no time for its completion.  In such a case, a reasonable time is generally intended.").  Next, a layout is provided by reference, as the price quotation states that Cole Builders will "furnish and erect nine (9) buildings in accordance with drawings provided by Michael Miller (Stahl Road-Central Kentucky Design, Inc dated 08-02-21)."  (Revised Evansville Quote 285); 1 Williston on Contracts § 4:38 (4th ed.) ("An offer or agreement may also refer to and incorporate another agreement for essential terms or for other purposes . . . .").  Finally, the price and payment terms are also included in the quote.  (Revised Evansville Quote 289).  Though the price is subject to certain conditions,[6] that does not make any resulting contract unenforceable.  *See* 1 Williston on

---

[6] For example, the contract states that the price is subject to revision if not accepted within a certain timeframe (either 15 or 30 days).  (Revised Evansville Quote 289-90).  The terms also provide that, "in the event Cole Builders receives notifications of price increases from its suppliers between the signing of this contract and the delivery of building materials[, Cole Builders] reserves the right to increase the contract price to cover the amount specified by said supplier."  (Revised Evansville Quote 290).  Finally, the terms also provide that the contract price may be adjusted if there are any variances from Miller's description or unknown conditions on the construction site. (Revised Evansville Quote 290).

Contracts § 4:38 ("The principle applies as well to a promise to sell at certain posted prices or at a price based upon the bona fide offer of a third party, or at an unstated agreed price easily ascertainable by reference to some extrinsic standard, or to deduct from an agreed price a specific amount to be determined by resort to an accounting or formula.").

Thus, the terms are "definite and certain" because they "set forth the 'promises of performances to be rendered by each party.'" *Frankfort Med. Invs., LLC v. Thomas by & through Thomas*, 577 S.W.3d 484, 488 (Ky. App. 2019) (quoting *Energy Home, Div. of S. Energy Homes, Inc.*, 406 S.W.3d at 834); *see U St. Music Hall, LLC v. JRC Standard Props., LLC*, 285 A.3d 1250, 1256 (D.C. 2022) ("At the same time, '[t]he requirement of definiteness cannot be pushed to extreme limits,' and inherent in all agreements is 'some degree of indefiniteness and some degree of uncertainty.'" (quoting *Rosenthal v. Nat'l Produce Co.*, 573 A.2d 365, 370 (D.C. 1990)). Accordingly, because the existence of a valid contract hinges on a genuine question of material fact—whether Miller orally accepted Cole Builders' offer—summary judgment on this claim is denied.

### b.    Damages

"The measure of damages for breach of contract is 'that sum which will put the injured party into the same position he would have been in had the contract been performed.'" *Hogan v. Long*, 922 S.W.2d 368, 371 (Ky. 1995) (quoting *Perkins Motors, Inc. v. Autotruck Fed. Credit Union*, 607 S.W.2d 429, 430 (Ky. App. 1980)). "Damages are not recoverable for loss beyond an amount that the evidence permits to be established with reasonable certainty." *Pauline's Chicken Villa, Inc. v. KFC Corp.*, 701 S.W.2d 399, 401 (Ky. 1985) (quoting Restatement (Second) of Contracts, § 352 (A.L.I. 1981)).

11

In this instance, Miller argues that Cole Builders cannot demonstrate the amount of lost profits to a reasonable degree of certainty because Cole Builders cannot prove the existence of the contract or any details of any alleged agreement. (Def.'s Mot. Summ. J. 9). As discussed above, the price quotation contains the material contractual terms, and whether the quote was accepted by Miller turns on a question of fact that must be decided by a jury. Miller's motion for summary judgment will therefore be denied on this basis.

### 2.    *Promissory Estoppel*

"[B]ecause promissory estoppel is not intended to provide an alternative to a breach of contract claim, where a contract exists on the subject matter of the alleged promise sought to be enforced, a claim for promissory estoppel is not cognizable." *Derby City Cap., LLC v. Trinity HR Servs.*, 949 F. Supp. 2d 712, 729 (W.D. Ky. 2013) (quoting *Jan Rubin Assocs., Inc. v. Hous. Auth. of Newport*, No. 03-CV-160-DLB, 2007 WL 1035016, at *14 (E.D. Ky. Mar. 30, 2007)). "Therefore, where there is a written contract, the enforceability of which is not in question, this Court has consistently dismissed promissory estoppel claims that are based on the same performance as is contemplated by the written agreement." *Id.* (citations omitted). In this instance, the existence of an enforceable contract depends on genuine issues of material fact, as discussed above, so summary judgment on Cole Builders' promissory estoppel claim on this basis would be premature.

Under Kentucky law, promissory estoppel has four elements: "(1) a promise; (2) which the promisor should reasonably expect to induce action or forbearance on the part of the promise; (3) which does induce such action or forbearance; and (4) injustice can be avoided only by enforcement of the promise." *C.A.F. & Assocs., LLC*, 913 F. Supp. 2d at 350 (quoting *Bergman v. Baptist Healthcare Sys., Inc.*, 344 F. Supp. 2d 998, 1003 (W.D. Ky. 2004)). "Additionally, the

12

promisee's reliance on the promise must be justified." *Id.* (citations omitted).  Miller contests the first and second elements.  (Def.'s Mot. Summ. J. 7-8).

### a.    Promise

"A 'promise,' in this context, is a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made."  4 Williston on Contracts § 8:4 (4th ed.).  Miller argues that there is insufficient evidence to prove that Miller made any promise to Cole Builders.  (Def.'s Mot. Summ. J. 8).  As discussed above, whether Miller orally accepted Cole Builders' quote and authorized it to order materials is a genuine question of material fact and must be decided by a jury.

### b.    Reasonable Reliance

The Supreme Court of Kentucky has noted that "whether reliance is justified (or as sometimes stated, reasonable) is a question of fact in all but the rarest of instances." *Yung v. Grant Thornton, LLP*, 563 S.W.3d 22, 47 (Ky. 2018) (citations omitted) (analyzing fraud by misrepresentation claim); *see* Restatement (Second) of Contracts § 90 (A.L.I. 1981) (internal citations omitted) ("Reliance is also a significant feature of numerous rules in the law of negligence, deceit and restitution.  In some cases those rules and [promissory estoppel] overlap; in others they provide analogies useful in determining the extent to which enforcement is necessary to avoid injustice.").  "As with any other factual question, though, we may rule for [the defendant] as a matter of law if no reasonable jury could find [the plaintiff's] reliance reasonable." *Hall v. Rag-O-Rama, LLC*, No. 20-6059, 2021 WL 5782381, at *6 (6th Cir. Dec. 7, 2021) (citation omitted) (analyzing fraud by misrepresentation claim).

Miller argues that Cole Builders' reliance on any alleged promise was not reasonable. (Def.'s Mot. Summ. J. 7-8).  Again, though Miller disputes making any promise, Cole Builders

13

alleges that Miller explicitly told Cole to order the buildings for the Evansville job. *See Kasuri v. St. Elizabeth Hosp. Med. Ctr.*, 897 F.2d 845, 853 (6th Cir. 1990) (applying Ohio law) ("A clear and unambiguous promise is just the type of representation that a reasonable promisor would expect to induce reliance.").

The parties also discussed the Lewisburg job and Evansville job through text and phone calls. (Cole & Miller Texts; Miller Dep. 64:7-11). On July 13, Cole texted Miller, "They are wanting to deliver some buildings to *Indiana* first week of August." (Cole & Miller Texts 240 (emphasis added)). Miller did not reply via text to this message. (Cole & Miller Texts 240). On August 17, Cole texted, "We have first building coming a week from tomorrow in *Indiana*. Do you have a gravel lot to store them on." (Cole & Miller Texts 241 (emphasis added)). Miller responded, "I will check. Should be ready. I will check with contractor." (Cole & Miller Texts 241). Miller then sent a picture and indicated that the Lewisburg site was ready, which Cole affirmed. (Cole & Miller Texts 241-2).

Miller argues that he never mentioned Evansville and believed they were both referring to the Lewisburg job, but Cole responds that if Miller had not agreed to the Evansville job, Miller would have corrected him when he mentioned Indiana, rather than Kentucky, as the location for the job. (Def.'s Mot. Summ. J. 7-8; Pl.'s Resp. Def.'s Mot. Summ. J. 11). Construing the evidence in Cole Builders' favor, a jury could reasonably infer that Miller continued to represent to Cole Builders that he wanted move forward with the job in Evansville, Indiana, and knew Cole Builders had relied on his promise. *See Budget Mktg., Inc. v. Centronics Corp.*, 927 F.2d 421, 427 (8th Cir. 1991) ("We conclude that the evidence of [the defendant's] oral assurances, coupled with [the plaintiff's] alleged reliance and [the defendant's] awareness of [the plaintiff's] reliance, is substantial enough to establish a triable claim under Iowa's promissory estoppel doctrine.");

14

Restatement (Second) of Contracts § 90 (A.L.I. 1981) (citing *Trifiro v. N.Y. Life Ins. Co.*, 845 F.2d 30, 31 (1st Cir. 1988)) (relying on oral statement was unreasonable because the statement was followed by letters that expressly contradicted it).

Especially given that the evidence must be viewed in the most favorable light for Cole Builders, a jury could find that it was reasonable for Cole Builders to rely on Miller's promise.[7] Thus, genuine disputes of material fact preclude summary judgment on Cole Builders' promissory estoppel claim.

### B.      Plaintiff's Motion

Cole Builders moves for partial summary judgment on Miller's counterclaim for fraud. (Pl.'s Mot. Summ. J. 1).   To succeed on a claim for fraud through misrepresentation under Kentucky law, the following six elements must be proven:

> (1) the defendant made a material representation to the plaintiff; (2) the representation was false; (3) the defendant knew the representation to be false or made it with reckless disregard for its truth or falsity; (4) the defendant intended to induce the plaintiff to act upon the misrepresentation; (5) the plaintiff reasonably relied upon the misrepresentation; and (6) the misrepresentation caused injury to the plaintiff.

*Helm v. Ratterman*, 778 F. App'x 359, 371 (6th Cir. 2019) (citing *Flegles, Inc. v. TruServ Corp.*, 289 S.W.3d 544, 549 (Ky. 2009)).   Fraud claims may be established with circumstantial evidence, but "mere conjecture or speculation is insufficient."   *PBI Bank, Inc.*, 535 S.W.3d at 714. "Circumstantial evidence is evidence of a definite nature that points to something being more

---

[7] Though not raised by the parties, Miller and Cole Builders' prior business relationship may also support reasonable reliance.   (Cole Dep. 90:24-25 ("that's just the level of trust you built up with a bunch of repeat customers")); *PBI Bank, Inc. v. Signature Point Condos. LLC*, 535 S.W.3d 700, 715 (Ky. App. 2016) (analyzing fraudulent misrepresentation claim) ("[W]e believe there was ample evidence from which the jury could determine that [the plaintiff] acted reasonably in relying on [the defendant].   This is especially true given the long-standing relationship between [the parties]." (citing *PCR Contractors, Inc. v. Danial*, 354 S.W.3d 610, 616 (Ky. App. 2011); *Cline v. Allis-Chalmers Corp.*, 690 S.W.2d 764, 767 (Ky. App. 1985)).

likely than not, while speculation invites only the consideration of the thing being possible." *Stanley v. Smith*, No. 2018-CA-001720-MR, 2019 WL 6817586, at *6 (Ky. App. Dec. 13, 2019).

Miller argues that Cole Builders made material misrepresentations that it could conduct the Lewisburg job.  (Def.'s Resp. Pl.'s Mot. Partial Summ. J. 4, DN 53).  Specifically, Miller contended in his deposition that Cole Builders falsely represented that it would complete the Lewisburg job, as well as the timeline and status of the materials order for the job.  (Miller Dep. 71:5-74:11; *see* Pl.'s Mot. Partial Summ. J. 10-11).

Cole Builders argues that breach of contract, not fraudulent misrepresentation, is the appropriate claim.  (Pl.'s Mot. Partial Summ. J. 13-14).  "Kentucky law has not recognized a fraudulent misrepresentation claim where a contract is involved unless the fraud induced the contract." *Thomas v. Brooks*, No. 2005-CA-001983-MR, 2007 WL 1378510, at *2 (Ky. App. May 11, 2007) (citation omitted).  Miller asserts that there was a contract for the Lewisburg job.  (Def.'s Resp. Pl.'s Mot. Partial Summ. J. 4).  Miller seems to argue that because Cole Builders ordered materials for the Evansville job, which he asserts there was no contract for, this somehow proves that Cole Builders lied when it agreed to the Lewisburg job.  (Def.'s Resp. Pl.'s Mot. Partial Summ. J. 4).  The Court does not follow this line of reasoning; any deviation from the parties' course of dealing regarding the Evansville job does not tend to prove that Cole Builders fraudulently misrepresented its intentions regarding the Lewisburg job.  Indeed, Miller cites no evidence— circumstantial or otherwise—that indicates Cole Builders intended to abandon the Lewisburg job. The fact that Cole Builders ultimately did not complete the Lewisburg job does not mean that it made any fraudulent misrepresentations to Miller.  *See RQSI Glob. Asset Allocation Master Fund, Ltd v. Apercu Int'l PR LLC*, 683 F. App'x 497, 503 (6th Cir. 2017) ("Mere statements of opinion and forward-looking recommendations are not actionable, even if misguided or overly optimistic,

unless the opinion 'either incorporates falsified past or present facts or is so contrary to the true current state of affairs that the purported prediction is an obvious sham.'" (quoting *Flegles, Inc.*, 289 S.W.3d at 549)). Because Miller provides no evidence that the Lewisburg contract was fraudulently induced, breach of contract, rather than fraudulent misrepresentation, is the appropriate claim.

Alternatively, Cole Builders asserts that Miller's fraudulent misrepresentation is barred by the economic loss doctrine. (Pl.'s Mot. Partial Summ. J. 14). "[T]he economic loss doctrine 'requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise.'" *Nami Res. Co. v. Asher Land & Min., Ltd.*, 554 S.W.3d 323, 335 (Ky. 2018) (alteration in original) (citation omitted). Cole Builder argues that Miller has not done so. (Pl.'s Mot. Partial Summ. J. 15). Because Miller does not respond to this argument, this is an additional ground for summary judgment. *Morrison v. Trulock*, No. 1:19-CV-00004-GNS, 2020 WL 2090525, at *6 (W.D. Ky. Apr. 30, 2020) ("[W]hen a party responds to some but not all arguments raised on a Motion for Summary Judgment, a court may fairly view the unacknowledged arguments as conceded." (quoting *Sykes v. Dudas*, 573 F. Supp. 2d 191, 202 (D.D.C. 2008))).

Moreover, even if Miller could bring a fraudulent misrepresentation claim, Cole Builders contends that all representations it made were either true or believed to be true. (Pl.'s Mot. Partial Summ. J. 11-12). Miller does not point to any evidence in the record demonstrating Cole Builders intentionally or recklessly made false representations, before or after entering into the Lewisburg contract. Additionally, Cole Builders provided testimony and documents suggesting that an order for materials was in fact placed with ACI Building Systems, Inc. ("ACI"), contrary to Miller's contention. (Pl.'s Mot. Partial Summ. J. 11). Miller's only response is that any communication

17

with ACI, which is the materials supplier for Cole Builders, cannot prove the parties' intentions or knowledge; however, Cole Builders' evidence indicates that an order was placed, so no false representation was made, which is a necessary element of Miller's claim. (Def.'s Resp. Pl.'s Mot. Partial Summ. J. 5). Miller provides no evidence or argument explaining how Cole Builders' representation regarding the materials order was false. *See* Fed. R. Civ. P. 56(c)(1).

Accordingly, Cole Builders is entitled to summary judgment on Miller's counterclaim.

### IV.    CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (DN 51) is **DENIED**. Plaintiff's Motion for Partial Summary Judgment (DN 50) is **GRANTED**, and Count II of Defendant's Answer & Counterclaim (DN 6) is **DISMISSED WITH PREJUDICE**.

**Greg N. Stivers, Judge**
**United States District Court**
March 25, 2026

cc:    counsel of record

18